### In re PECKERMAN.
### No. 35778.

District Court, E. D. New York.

Aug. 19, 1940.

Abraham R. Zaldin, of Brooklyn, N. Y., for bankrupt.

Scudder, McCoun, Stockton & Kerfoot, of New York City, for Brooklyn Nat. Bank of New York, objecting creditor. '

ABRUZZO, District Judge.

There are two motions before the court, one by an objecting creditor for the review of the orders of the referee dated March 26, 1940, and May 18, 1940; and the other by the bankrupt for an order dismissing the petition for review by the objecting creditor and confirming the order of the referee, dated May 18, 1940. Both motions were heard simultaneously.

In specification 1, the objecting creditor contends that the bankrupt failed to keep or to preserve books of account or records from which his financial condition and business transactions might be ascertained. Specification 2 sets forth the claim that the bankrupt obtained money and extension and renewals of credit by making materially false statements respecting his financial condition. Specification 3 states that the bankrupt concealed and transferred property belonging to him with intent to hinder, delay and defraud his creditors, and specification 4 claims that he failed to explain the loss of his assets and deficiency of assets to meet his liabilities.

The referee found in favor of the bankrupt and recommended his discharge.

The objecting creditor asserts in specification 4 that due to the failure of the bankrupt to produce any books or records it has been impossible to check the accuracy or inaccuracy of the bankrupt's financial condition. Undoubtedly there is much to be said as to this specification due to the large shrinkage of assets which the bankrupt claims to have had within the period of a year. However, the referee could not have found other than as he did. His finding is therefore upheld as to specification 4.

The girls' summer camp operated in Connecticut, referred to in specification 3, was a highly involved transaction, but there was no direct proof to sustain this specification. Therefore, the conclusion reached by the referee as to this specification is upheld.

The findings of the referee as to specifications 1 and 2 are overruled.

The bankrupt testified that he never had any books of account, although in April, 1930, his net worth was $50,000. He lost all this money but testified that he had no books or records of any kind to indicate where it went nor had he any books at any time. It would seem, however, that a business man of his type would at least have old check book stubs and bank books.

The bankrupt had two shoe stores which were sold out for very small amounts. There is some evidence that he owned one individually and the other in the name of a corporation. It is conceded that a full set of books were kept for both stores, but the bankrupt claims that when they were sold the books and records were not kept or preserved even though he admits that he owed his creditors a large amount of money at that time.

Upon the sale of his stores, the bankrupt bought some claims of creditors, settled some and ignored others. To do this, he would have had to have some knowledge of the items. He, therefore, must have had books of account. He should have preserved them. No credence can be placed in the testimony that his books were destroyed.

The bankrupt obtained loans from various banks at which time he filed financial statements, both corporate and individual. To reach a definite conclusion as to what his personal assets and liabilities were as well as his corporate assets and liabilities he must of necessity had both personal and corporate books and records.

Other businesses conducted by the bankrupt were the Home Educational Bureau in the name of an infant daughter and the State Auto Service in the name of a corporation wholly owned by the bankrupt. His creditors lost everything in these businesses and again no books were produced and the bankrupt could not give any information as to the accounts or records from memory. The books are claimed to have been abandoned.

It is the opinion of this court that the bankrupt had the books but did not produce them.

The bankrupt has cited cases where failure to keep books did not constitute a bar to a discharge. In re Block, D.C., 29 F. Supp. 110, Texas Nat. Bank v. Edson, 5

264

Cir., 100 F.2d 789. The bankrupt's position is clearly distinguishable from the cases cited. In the cases mentioned, satisfactory explanations and reasons were given for the disposition of the books or the failure to keep records.

█ In the instant case, here is a man, in business for many years, with a host of creditors, without books, records or even a set of papers from which an investigation of his financial condition could be ascertained.

This conduct is obviously not in compliance with the Bankruptcy Act, 11 U.S. C.A. § 1 et seq.

Specification 2 asserts that the bankrupt obtained money and extensions and renewals of credit by making false statements as to his financial operations.

In May, 1930, the bankrupt obtained a loan of $5,000 from the Brooklyn National Bank, the objecting creditor, to his corporation, Jack & Jill Playmates, Inc., upon the basis of his personal financial condition.

On April 29, 1930, the corporate statement contained representations that its assets were $32,300, fixtures $3,000, security deposit with the landlord $1,500, total of $37,500; and that the liabilities were accounts payable $11,346, notes payable $4,000, total $15,346; and that its net worth, capital and surplus, was $22,000. Within a year, the liabilities were not less than $25,000 and there were no assets to meet them. No books or records were kept by the bankrupt to ascertain whether this statement was true or untrue.

A personal statement made by the bankrupt to the Brooklyn Trust Company on January 1, 1930, stated that he had merchandise in the amount of $32,199 and fixtures worth $2,500, whereas, as the bankrupt testified, these assets were the property of Jack & Jill Playmates, Inc., and not his own. He further represented that he owned twenty-six shares of stock of Eastern Parkway, Brownsville and East New York Transit Relief Association in the sum of $3,000, free and clear, when in truth and fact part of this stock was pledged to secure a loan of $3,000 from Reliance Investment Company and other shares were pledged to Morris Plan Bank to secure a loan to the bankrupt and A. Hershkowitz on a note, dated March 20, 1930.

█ In these statements, the bankrupt did not list debts far in excess of those included.

In October, 1931, the bankrupt represented that Jack & Jill Playmates, Inc., had assets of $11,234.50, $1,000 of fixtures and $350.48 in cash; and that its liabilities were $2,315.50 in accounts payable and $3,000 due the Brooklyn National Bank. Prior to the making of this statement, one of the stores owned by the Jack & Jill Playmates, Inc. had been sold for $1,440, and the money pocketed by the bankrupt.

There are so many discrepancies in the financial statements and operations of the bankrupt, that the decision of the referee as to specification 2 is overruled.

Therefore, the motion for an order dismissing the petition for review is denied. As to the motion for the review of the orders of the referee, dated March 26, 1940, and May 18, 1940, granting the discharge of the bankrupt, these orders are vacated, the discharge of the bankrupt is denied, the decision of the referee as to specifications 1 and 2 are overruled and as to specifications 3 and 4 sustained.

Settle order on notice.